Henry L. Self III (CA Bar No. 223153)
HSelf@HarderStonerock.com
Steven H. Frackman (CA Bar No. 265188)
SFrackman@HarderStonerock.com
HARDER STONEROCK LLP
6300 Wilshire Blvd., Suite 640
Los Angeles, California 90048
Telephone: (424) 203-1600
Facsimile: (424) 203-1601

Attorneys for Plaintiffs
STATIC-X LLC, ANTONIO CAMPOS
and BRIAN C. EBEJER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STATIC-X LLC, a California limited liability company; ANTONIO CAMPOS p/k/a TONY CAMPOS, an individual; and BRIAN C. EBEJER p/k/a EDSEL, an individual,

Plaintiffs,

v.

MATTHEW C. ZICARI p/k/a MATT ZANE a/k/a LORD ZANE, an individual; and DOES 1–10, inclusive,

Defendants.

Case No. 2:26-cv-9327

**COMPLAINT FOR:**

1. **VIOLATION OF CALIFORNIA PENAL CODE § 502;**
2. **COPYRIGHT INFRINGEMENT;**
3. **BREACH OF CONTRACT;**
4. **BREACH OF CONFIDENCE;**
5. **INVASION OF PRIVACY; AND**
6. **VIOLATION OF CALIFORNIA PENAL CODE § 528.5**

**DEMAND FOR JURY TRIAL**

Plaintiffs Static-X LLC, Antonio Campos and Brian C. Ebejer (collectively, “Plaintiffs”) allege as follows:

## INTRODUCTION

1. Plaintiffs are a world-renowned, major label musical act—Static-X—and its acting manager. Static-X valiantly rebounded from the shocking death of its beloved frontman—Wayne Wells p/k/a Wayne Static—and continues to enthrall fans around the globe more than three decades into the group’s storied history.

2. The named defendant, Matthew Zicari p/k/a Matt Zane a/k/a Lord Zane (“Zicari”) is a frustrated public exhibitionist, videographer, musician and former adult film actor/director. Now in his 50s, Zicari has often publicly expressed bitterness towards the world for denying him the fame, fortune and attention he desires, simply for knowing or having an association with more prominent artists like Static-X and its members.

3. This suit arises roughly a year after Zicari’s voluntary exit from work on an official Static-X documentary film project, *Evil Disco*, which the band and its manager independently developed and funded. The first teaser trailer for *Evil Disco* is available at https://www.youtube.com/watch?v=A0LaayI0frw. In addition to other generous concessions, Static-X LLC paid Zicari more than $75,000 for his efforts on the developmental movie.

4. After growing impatient with the process and voluntarily withdrawing from participation, Zicari betrayed Plaintiffs and is now weaponizing valuable, confidential Static-X digital property against them on a daily basis. Among other things, Zicari is maliciously posting unauthorized video segments that he stole directly from the copyrighted audiovisual recordings of the *Evil Disco* Static-X documentary, using deliberate and deceptive editing techniques to exploit those private clips outside of important context with the deliberate intent to do harm. Having been shot in private spaces (which include dressings rooms and bathrooms), some of the clips Zicari has posted show the individual Plaintiffs and other innocent bystanders in various stages of undress.

5. Zicari is deliberately using these exploitive tactics to seek viral moments at the expense of Plaintiffs, while proving his intention to monetize by attaching payment links and blatantly asking fans for monetary contributions to his projects.

6. Zicari has further been taunting Plaintiffs by publicizing private information about plaintiff Brian C. Ebejer ("Ebejer") and his residence, where Ebejer quietly lives with his fiancé and their young daughter.

7. Zicari also unlawfully accessed and published his rhetoric on the official Static-X account on X (formerly known as Twitter), @OfficialStaticX. Zicari's illicit posts included disparaging remarks concerning Ebejer and band members including plaintiff Antonio Campos, professionally known as Tony Campos ("Campos"). Zicari then highlighted those posts through his own social media accounts in an attempt to legitimize and draw attention to them.

8. Zicari's relentless online attacks on Plaintiffs, for whom he worked for many years, are unwarranted and cross lines of both legal and ethical proportion. Plaintiffs financially compensated Zicari, as mutually agreed, and have always treated him fairly. In addition to the above-mentioned $75,000 related to *Evil Disco*, Static-X and Ebejer also paid Zicari tens of thousands of dollars for additional video projects and also graciously allowed Zicari's band to share the stage at several shows during the virtually sold out Rise of the Machine tour that Static-X headlined in 2023.

9. Zicari was recorded in 2023 (within the unreleased copyrighted footage of the *Evil Disco* Static-X documentary) expressing his full support for Static-X, Campos and Ebejer. It is only now—in his selfish pursuit of Internet fame and fast money—that Zicari has made an abrupt about face and is egregiously exploiting Plaintiffs' own digital property against them.

10. Plaintiffs come to this Court respectfully seeking protection from the aggressive offensive by which Zicari is targeting them using credentials, footage, documents and other data that he unlawfully misappropriated from Static-X.

## JURISDICTION AND VENUE

11. This Court has exclusive original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the action arises in part under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

12. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case or controversy.

13. Venue is proper in the Central District of California, as a substantial part of the events or omissions giving rise to the claim occurred in this district and/or all defendants reside in this district.

## PARTIES

14. Plaintiff Static-X LLC is a limited liability company organized under the laws of the State of California having its principal place of business in the State of California. It is the formal legal entity through which the band conducts its current business.

15. Plaintiff Campos, is, and at all times relevant hereto was, an individual residing in Los Angeles County, California. Campos is now the sole remaining member of the original Static-X partnership. One of the four founding band members, he is a coauthor on more than half of the group's published works and has performed bass guitar and vocals on every Static-X album released. He holds United States registrations of the STATIC-X trademark (Registration Nos. 5,750,844 and 5,947,428).

16. Having also played bass in a number of other established touring acts, Campos is a respected member of the metal music community. He has earned a reputation for being reliable and consistent, and for exhibiting the highest level of professionalism for both Static-X and himself. Campos is a small business owner who, through his work with Static-X, regularly contributes to the employment of dozens of independent contractors, crew members and performance artists.

17. Plaintiff Ebejer, professionally known as Edsel, is, and at all times relevant hereto was, an individual residing in Los Angeles County, California. He acts as Static-X's day-to-day manager. Ebejer is a professional recording artist, producer and manager who

was previously signed to Epic Records and has generated millions of dollars in revenue through his band Dope, while also establishing his own record label imprint in 2003. Ebejer's music has been featured in several broadcast television programs and motion pictures, and on programming for the UFC, WWE and ESPN. While he previously served as Director of Music Development and Entertainment for GMR Marketing (an OMNICOM Agency), Ebejer was in charge of comprehensive music programs for clients that included the National Football League and Major League Baseball, among others. In addition to music, Ebejer is also an accomplished entrepreneur and co-owner/operator of the cutting edge tech start up Ecco Studios, which was sold in 2025, netting Ebejer seven figures for his efforts.

18. Ebejer has a reputation for being a hardworking team leader, father and business owner who continues to contribute to the employment of dozens of independent contractors, crew members, and performance artists through his 30 years of consistent work in the entertainment business and touring concert community. Now in his early 50s with a family, Ebejer is generally a private person who does not regularly engage with or post on social media, and he does not use his wealth or accomplishments for attention or brand recognition.

19. Ebejer has excelled at delivering music master recordings, merchandise, promo materials and live experiences independently, without the assistance of a major record label or management team. His leadership and experience have been integral to the adaptation of these measures for Static-X, who—prior to working with Ebejer—had never functioned outside of the major label structure that Warner Bros. previously provided.

20. Ebejer has worked closely alongside the members of Static-X and the Wells family to systematically rebuild the legacy of Static-X and to preserve the lasting and positive memory of Wayne Wells p/k/a Wayne Static, whose spirit lives on through the band's legendary music. In 2023, with Ebejer's assistance, Static-X completed its highest grossing tour in history and was invited to take part in several major music festivals around the world. All of this was unthinkable a few short years earlier.

21. Ebejer continues to humbly and quietly serve the greater interests of Static-X along with the memory of Wayne Wells. Ebejer has developed a very personal connection with the Wells family, who has publicly expressed its heartfelt appreciation for his efforts, along with its ongoing support of Static-X. In addition, Ebejer had a personal relationship with Wayne Wells which began in 1999, when they spent the better part of two years touring together and speaking on a regular basis. Ebejer and Wells would last see each other in May 2014 while performing together in Pomona, California. That was just a few months before Wells' heartbreaking death and would be his final public performance in the United States.

22. Defendant Zicari is, and at all times relevant hereto was, an individual residing in Los Angeles County, California.

23. Plaintiffs intend to hold any and all others who have acted in concert with Zicari fully accountable. Plaintiffs are presently unaware of the true names and capacities of the defendants sued herein as Does 1 through 10 inclusive and, therefore, sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of such fictitiously-named defendants when the same have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously-named defendants is responsible in some manner for the occurrences, acts and omissions alleged herein, and that Plaintiffs' damages were proximately caused by their conduct.

24. Plaintiffs are informed and believe, and based thereon allege, that each defendant at all times mentioned in this complaint was the agent, employee, partner, joint venturer, co-conspirator, and/or employer of the other defendants and was at all times herein mentioned acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, or joint venture. Plaintiffs are further informed and believe, and thereon allege, that the acts and conduct herein alleged of each defendant was known to, authorized by and/or ratified by the other defendants, and each of them.

## FACTS

### The Rise, Fall, and Regeneration of Static-X

25. Static-X is an enduringly popular nu metal band formed in Los Angeles more than 30 years ago. The group signed to Warner Bros. Records in 1997 and first achieved international prominence as the recording industry reached its financial peak at the turn of the century. The group released a half dozen chart-topping albums featuring such hard rock hits as the breakthrough debut single "Push It," ultimately selling more than three million records and completing numerous successful concert tours.

26. The band's lead singer, Wayne Wells p/k/a Wayne Static began succumbing to the many trappings of fame and would spiral into a life of alcohol and drug addiction. As a result, his life prematurely came to a sudden, sad end in 2014.

27. In 2017, Static-X was in shambles and the last news headlines involving Wayne Static were grim. Nonetheless, the three surviving, original band members decided to reform their band that year with the support of the Wells family and estate. With Ebejer's assistance, Static-X launched a valiant celebration of the 20th anniversary of its debut album along with a memorial celebration for the late singer. They would tour the world and began releasing new music, while building an independent infrastructure to remain connected to their fans.

28. The reunion was, and continues to be, a smashing success. Static-X has independently released two additional albums (comprising all-new music as well as recovered archival recordings) and toured the world multiple times over since reuniting. It has spent the last eight years actively strengthening its own legacy and that of its founders, while heavily investing into touring, set design and the release of new music, to reestablish the band's prominence, professionalism and connectivity with the music community and millions of fans around the globe. All of this, more than three decades into the group's legendary journey and with the absence of its original face and leader.

29. In the eight years since the band reformed, the value of Static-X's music catalog has increased more than tenfold. This directly benefits the estates of both Wayne

Wells and his late wife Tera Wray (who is also now deceased), as the estate receives 100% of Wayne Wells' music royalties, which represent the majority of the Static-X music catalog.

**Plaintiffs' *Evil Disco* Documentary Project**

30. Static-X is engaged in an ambitious endeavor to create an official, nonfiction feature film depicting the 32-year history of the band, the early years of its members and its triumphant return to the spotlight. An official teaser trailer for *Evil Disco: The Rise, Fall, and Regeneration of Static-X* premiered on the band's official platforms in March 2024 in conjunction with the 25th anniversary of its debut full-length album.

31. In connection with the production *Evil Disco*, Static X and Ebejer purchased various professional grade cameras, production gear, software licenses, digital storage media and editing tools. It enlisted camera operators, sound technicians, lighting experts, hair and makeup artists and many others in service of the undertaking. At this point, *Evil Disco* represents an investment of at least $150,000 in its current state.

32. Static X has captured approximately dozens of hours of audiovisual content for the film (collectively, the "Unedited *Evil Disco* Footage"). Such material comprises (among other things) long-form interviews with Static-X members, Ebejer, members of Wayne Wells' family, artistic collaborators and more than a dozen celebrities, including members of rock bands such as Mötley Crüe and Jane's Addiction. Plaintiffs are informed and believe, and based thereon allege, that Zicari is currently in possession of all Unedited *Evil Disco* Footage, which jeopardizes the rights of those appearing in this footage.

33. Static-X LLC registered the copyrights in the unpublished Unedited *Evil Disco* Footage with the United States Copyright Office under registration number PAu 4-320-487.

**Zicari's Crusade to Harass and Irreparably Harm Plaintiffs**

34. Defendant Zicari is among the various outside service providers and other vendors hired to work on *Evil Disco*.

35. Under his oral contract, Static X LLC initially agreed to pay Zicari a standard

"day rate"—typically $300 to $800—for his efforts specific to the project, and then later a flat monthly fee of $3,000 once production progressed to the editing stage. Between 2021 and 2025, Static X LLC paid Zicari a total of more than $75,000, primarily to manage data and assist with the editing of the extensive Unedited *Evil Disco* Footage, along with other footage collected over the span of the band's 30+ year history. (This was in addition to other services Zicari provided in connection with music videos and tour promotion, for which Zicari was compensated separately.)

36. Zicari's involvement with Static-X cordially concluded in early April 2025 on apparently amicable terms. He wrote to Ebejer at the time, "I've decided to move in a different direction" and "Best of luck with everything." Upon his exit, Zicari represented that he had returned all of the physical devices and digital data that had been entrusted to him in connection with his provision of services.

37. In the ensuing months after departing under seemingly cordial circumstances, however, Zicari started demonstrating significant animus towards the members of Static-X—including Campos in particular (for whatever reason)—and Ebejer. In a senseless rampage of retribution, Zicari has gone to great lengths to both specifically sabotage the success of *Evil Disco* and also generally do as much harm to Plaintiffs as is within his power.

38. Among other things, Zicari has been cleverly editing and maliciously publishing online extensive, previously unreleased portions of the copyright-protected Unedited *Evil Disco* Footage recordings, including (but not limited to) via Zicari's social media accounts on platforms such as Instagram, Facebook, TikTok and YouTube. Plaintiffs never authorized Zicari to retain copies of—let alone reproduce, perform or otherwise exploit— any of the Unedited *Evil Disco* Footage, with which he apparently absconded when exiting the project.

39. By forcibly denying Plaintiffs of the ability to exercise their exclusive right of first publication of the Unedited *Evil Disco* Footage, Zicari is actively undermining the very real and potentially lucrative monetary value of their $150,000 investment.

40. Consisting of many dozens of hours of candid, behind-the-scenes outtakes and other portions unsuited for publication, much of the Unedited *Evil Disco* Footage was **never** even intended for public release in the first place. Many friends, fans, family members, crew members, venue employees and others recorded on camera did not sign (and were not asked to sign) appearance releases. A significant fraction of the Unedited *Evil Disco* Footage was shot backstage, in dressing rooms, locker rooms, restrooms and other private places, and sometimes portrays individuals in intimate states of undress.

41. Yet Zicari has gone out of his way to publicly disseminate and highlight excerpts of Unedited *Evil Disco* Footage that he takes completely out of context and that are inconsistent with the high quality, professional level of material for which Plaintiffs have long been known. Zicari retained the services of a publicist to assist him with gaining more exposure for his unethical, targeted campaign against Plaintiffs, on which Zicari is capitalizing by attaching payment links soliciting monetary contributions to his projects.

42. In addition to purloined video footage, Zicari has also recently revealed that he stole other Static-X data and items, potentially including copies of band members' private email messages. Plaintiffs are not presently aware of the full extent of everything that Zicari amassed but, on many occasions, they trusted him with access to private physical spaces—*e.g.*, backstage areas, private residences, studios—as well as digital domains, hard drives, etc. as part of his work, with a clear expectation of privacy.

43. On or about August 5, 2026, Zicari illegally gained access to the official Static-X account on X (formerly Twitter), @OfficialStaticX, where he proceeded to post disparaging remarks concerning Ebejer and the band members. Zicari subsequently highlighted those posts on his own social media accounts so as to legitimize and attract further attention to them. Plaintiffs are informed and believe, and based thereon allege, that—as confirmed by Internet protocol records that Plaintiffs obtained—the posts originated from Zicari.

44. Plaintiffs are informed and believe that Zicari possesses considerable computer skills and a potent ability to harness deceptive digital tools such as using

artificial intelligence. Knowing that Zicari wrongfully has dozens of hours of raw, unedited interview footage in his possession, they would not be surprised if he vindictively created and circulated completely fabricated AI-generated content purporting to portray one or more of them.

45. Zicari has grown increasingly brazen in recent weeks, ratcheting up hostilities even further as he continues to not only continue to leak additional unauthorized segments of Unedited *Evil Disco* Footage but also taunting Plaintiffs by seeking Ebejer's fiancé out on social media and posting private photos and video of Ebejer and the residence where they live with their young daughter.

46. While Zicari is viciously attacking them on a daily basis, Plaintiffs have remained silent for more than a year, having never commented, acknowledged or said anything publicly regarding Zicari or any productions in which he is involved. However, Zicari's misconduct has escalated to such an extent that it has left Plaintiffs with no alternative but to seek legal recourse through the Court.

**The Last Days of Wayne Static**

47. Zicari was present during some of the darkest times of Wayne Wells' life. He is now misrepresenting his access and relationship to both the band and Wells, in a bid to obtain relevance and notoriety from fans based on these associations.

48. Wayne Wells would tragically die of a drug overdose in 2014. His widow, Tera Wray, would take her own life one year later. Zicari has boasted of being around the couple during the last few years of their life and claims to have captured many of those private moments on videotape. He is on record in 2011 encouraging Wells and his wife—a former adult film actress—to showcase more and more of their self-destructive and oftentimes illegal behavior for his camera.

49. Wells' family has raised great concern over Zicari's motives in connection with this footage and rejected his attempts to exploit private footage of the couple. Counsel for Wells' parents sent Zicari a formal legal letter in December 2025 demanding that he cease and desist his infringing activity, but Zicari instead publicly flaunted the

correspondence and announced his categorical refusal to comply therewith, demonstrating his intentional and malicious intentional disregard for Plaintiffs' rights.

50. Zicari has claimed (among other things) to be a source of personal information, when in fact he is only interested in sensationalism through manipulation with the goal of virality, in order to monetize an audience for himself. He has attempted to crowdfund his projects using the Static-X and Wayne Static names and regularly posts links encouraging patrons to donate to him through payment apps—all while recklessly attempting to destroy Plaintiffs' reputations, which have been built over more than 30 years of creativity, hard work and positive contributions that Static-X, Wells, Campos and Ebejer have each independently and collectively made to the heavy metal music community.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA PENAL CODE § 502**

**By Static-X LLC Against All Defendants**

51. Plaintiffs hereby refer to and incorporate by reference all of the allegations contained in the preceding paragraphs as though set forth in full herein.

52. California Penal Code § 502(e) expressly authorizes a civil action and injunctive relief for violations of California Penal Code § 502, in addition to criminal liability for violations of the statute.

53. 45. Static-X LLC is the owner of the digital storage media and all data stored thereon that were entrusted to Zicari in the course of his provision of services to Static-X LLC from 2017 through 2025. Static-X LLC also owns its official X account, @OfficialStaticX.

54. By retaining, accessing and/or making unsanctioned use of the data contained on Static-X LLC's digital storage media, including not limited to the Unedited *Evil Disco* Footage, and its official X account, Defendants engaged in conduct prohibited by California Penal Code § 502(c)—specifically:

a. Knowingly accessing and without permission altering, damaging,

deleting, destroying, or otherwise using any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data; and

b. Knowingly accessing and without permission taking, copying, or making use of any data from a computer, computer system, or computer network, or taking or coping any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

55. Defendants' conduct in violation of California Penal Code § 502 was a substantial factor in causing Static-X LLC's harm.

56. As a direct and proximate result of Defendants' conduct, Static-X LLC has suffered actual damages in excess of $100,000, the full amount of which will be proven at trial.

57. Defendants' conduct in violation of California Penal Code § 502 was fraudulent, willful, malicious and oppressive, and constitutes despicable misconduct and a conscious disregard of Static-X LLC's rights, and was intended to cause harm to Static-X LLC. Pursuant to California Penal Code § 502(e)(4), Static-X LLC is entitled to punitive and exemplary damages.

58. Pursuant to California Penal Code § 502(e)(2), Static-X LLC is entitled to the recovery of its attorneys' fees, which currently exceed $25,000 and are expected to well exceed $100,000 if the matter proceeds to trial.

59. Defendants' conduct has caused, is continuing to cause, and will further cause great damage to Static-X LLC, which damages cannot be accurately measured in monetary terms, and therefore, unless enjoined by the Court, Static-X LLC will suffer irreparable injury, for which Static-X LLC is without adequate remedy at law. Accordingly, Static-X LLC is entitled to preliminary and permanent injunctive relief.

**<u>SECOND CLAIM FOR RELIEF</u>**

**COPYRIGHT INFRINGEMENT**

**By Static-X LLC Against All Defendants**

60. Plaintiffs hereby refer to and incorporate by reference all of the allegations contained in the preceding paragraphs as though set forth in full herein.

61. Static-X LLC owns the copyrights in the Unedited *Evil Disco* Footage.

62. By publishing and disseminating portions of the Unedited *Evil Disco* Footage, including but not limited to on Instagram, Facebook, TikTok and/or YouTube on August 7, 8, 9, 11 and 15, 2026, without necessary authorization or justification, Defendants have willfully infringed Static-X LLC's copyrights.

63. By reason of such infringements, Static-X LLC has sustained and will continue to sustain substantial injury, loss and damage.

64. Static-X LLC is entitled to recover the damages sustained as a result of Defendants' acts of copyright infringement, the full extent of which Static-X LLC is at present unable to ascertain but which are believed to exceed $150,000.

65. Static-X LLC is further entitled to recover the gains, profits and advantages that Defendants have obtained as a result of their acts of copyright infringement, the full extent of which Static-X LLC is at present unable to ascertain.

66. Irreparable harm to Static-X LLC is imminent as a result of Defendants' conduct, and Static-X LLC is without an adequate remedy at law. Static-X LLC is entitled to preliminary and permanent injunctions restraining Defendants and their successors, assigns, licensees, agents, representatives and all persons acting in concert with them from engaging in additional such acts of copyright infringement.

**<u>THIRD CLAIM FOR RELIEF</u>**

**BREACH OF CONTRACT**

**By Static-X LLC Against All Defendants**

67. Plaintiffs hereby refer to and incorporate by reference all of the allegations contained in the preceding paragraphs as though set forth in full herein.

68. There exists a valid and enforceable unwritten contract between Static-X LLC and Zacari pursuant to which Zacari promised to provide services to Static-X LLC, including stewardship and editing of the Unedited *Evil Disco* Footage, in exchange for compensation from Static-X LLC. As part of this agreement, Zacari agreed to completely return Static-X LLC's digital storage media and not copy or use any data thereon at the conclusion of the provision of his services.

69. Static-X LLC has fully performed all duties, obligations, covenants and conditions pursuant to this agreement, except to the extent that such performance was waived, excused, or prevented because of the acts and omissions of Defendants.

70. Defendants have breached this agreement by their misconduct as alleged herein.

71. As a direct and proximate result of Defendants' breaches of the parties' agreement, Static-X has incurred damages in excess of $60,000, the full amount of which is to be determined at trial.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF CONFIDENCE**

**By Static-X LLC Against All Defendants**

72. Plaintiffs hereby refer to and incorporate by reference all of the allegations contained in the preceding paragraphs as though set forth in full herein.

73. Static-X LLC offered, and Zacari voluntarily received, in confidence, digital storage media, which contained the Unedited *Evil Disco* Footage and other private data belonging to Plaintiffs, with the understanding that such data was not be retained, copied and/or used for purposes other than Zacari's provision of services to Static-X LLC, without Static-X LLC's express permission

74. Defendants breached this confidence by retaining, copying and/or using Static-X LLC's digital storage media and the stored data thereon without Static-X LLC's permission, as alleged herein.

75. As a direct and proximate result of Defendants' breaches of confidence, Static-X has incurred damages in excess of $200,000, the full amount of which is to be determined at trial.

76. Defendants' breaches of confidence were fraudulent, willful, malicious and oppressive, and constitutes despicable misconduct and a conscious disregard of Static-X LLC's rights, and were intended to cause harm to Static-X LLC. Pursuant to California Penal Code § 502(e)(4), Static-X LLC is entitled to punitive and exemplary damages.

## FIFTH CLAIM FOR RELIEF

## FALSE LIGHT – INVASION OF PRIVACY

### By Ebejer and Campos Against All Defendants

77. Plaintiffs hereby refer to and incorporate by reference all of the allegations contained in the preceding paragraphs as though set forth in full herein.

78. By selecting, publishing and disseminating misleadingly edited portions of Unedited *Evil Disco* Footage portraying Ebejer and Campos, which was intentionally removed from necessary context, Defendants publicly disclosed material that unfairly paints Ebejer and Campos in a false light.

79. This false light created by these disclosures was highly offensive to the reasonable person.

80. Defendants knew that these disclosures would create a false impression of Ebejer and Campos, or acted with reckless disregard for the truth.

81. As a direct and proximate result of Defendants' conduct, Ebejer and Campos have incurred damages in excess of $250,000, the full amount of which is to be determined at trial.

82. Defendants' conduct was willful, malicious and oppressive, and constitutes despicable misconduct and a conscious disregard of Ebejer's and Campos' rights, and was intended to cause harm to them. By reason thereof, Ebejer and Campos are entitled to punitive and exemplary damages, the amount of which is to be determined at trial.

**SIXTH CLAIM FOR RELIEF**

**VIOLATION OF PENAL CODE § 528.5**

**By Campos Against All Defendants**

83. Plaintiffs hereby refer to and incorporate by reference all of the allegations contained in the preceding paragraphs as though set forth in full herein.

84. California Penal Code § 528.5(e) expressly authorizes a civil action and injunctive relief for violations of California Penal Code § 528.5, in addition to criminal liability for violations of the statute.

85. On or about August 5, 2026, Defendants unlawfully gained access to the official Static-X account on X, @OfficialStaticX, where they posted disparaging remarks concerning Ebejer, Campos and others. Defendants then drew attention to these posts on Zicari's own social media accounts in an effort to legitimize and draw further attention to them.

86. Defendants' unauthorized posts on the @OfficialStaticX profile constitute impersonation of Campos, who is well-known as a current member of Static-X.

87. Defendants knowingly and without consent credibly impersonated Campos by making these posts, and a person would reasonably believe, or did reasonably believe, that Campos was the person being impersonated.

88. As a direct and proximate result of Defendants' conduct, Campos has suffered actual damages in excess of $50,000 the full amount of which will be proven at trial.

89. Defendants' conduct was willful, malicious and oppressive, and constitutes despicable misconduct and a conscious disregard of Campos' rights, and was intended to cause harm to them. By reason thereof, Campos is entitled to punitive and exemplary damages, the amount of which is to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

1. For a preliminary and permanent injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with

them from further using, exploiting or infringing any of Plaintiffs' copyrighted materials;

2. For actual copyright infringement damages and Defendants' profits in an amount to be determined at trial;

3. For damages according to poof at trial, including general, special, punitive and exemplary damages in excess of $1 million;

4. For costs of suit and attorneys' fees incurred herein;

5. For interest on the above-requested damages and profits at the maximum legal rate as provided by law; and

6. For such other and further relief as the Court deems just and proper.

Dated: August 20, 2026 HARDER STONEROCK LLP

By: /s/ Henry L. Self III
HENRY L. SELF III
Attorneys for Plaintiffs
STATIC-X LLC, ANTONIO CAMPOS
and BRIAN C. EBEJER

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs respectfully request a trial by jury on all claims asserted in this Complaint.

Dated: August 20, 2026 HARDER STONEROCK LLP

By: /s/ Henry L. Self III
HENRY L. SELF III
Attorneys for Plaintiffs
STATIC-X LLC, ANTONIO CAMPOS
and BRIAN C. EBEJER